UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DAVID S. LAYNE,

        Plaintiff,                      Case No. 08-cv-12552

vs.                                        DISTRICT JUDGE ARTHUR J. TARNOW
                                            MAGISTRATE JUDGE STEVEN D. PEPE
MICHAEL J. ASTRUE,
COMMISSIONER OF SOCIAL SECURITY,
                 Defendant.
=========================/

## REPORT AND RECOMMENDATION

### I.    BACKGROUND

David S. Layne brought this action under 42 U.S.C. § 405(g) and §1383(c)(3) for judicial review of the Commissioner's final decision that Plaintiff was not entitled to Disability Insurance Benefits ("DIB") under Title II of the Social Security Act or Supplemental Social Security Income ("SSI") under Title XVI of the Social Security Act. Both parties have filed motions for summary Judgment, which have been referred pursuant to 28 U.S.C. § 636(b)(1)(B) and (C). For the following reasons, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**.

#### A.    Procedural History

Plaintiff filed an application for DIB and SSI in July 2005, alleging that he became disabled the preceding March, due to depression, and bladder and testicular problems (R. 58, 75-76). After Plaintiff's application was denied upon initial review, an administrative hearing was held on December 27, 2007, at which Plaintiff was represented by his present attorney, Philip R. Fabrizio (R. 312-329). Vocational Expert ("VE") Pauline Pegram also testified (R. 325-329).

1

In a January 31, 2008, decision, Administrative Law Judge ("ALJ") Melvyn B. Kalt found that Plaintiff was not disabled because, despite his impairments, he could perform a significant number of limited light level jobs (R 13-17). On April 10, 2008, the Appeals Council denied review of the ALJ's decision (R. 5-7).

**B.    Background Fact** [1]

Plaintiff was 47 years old at the time of the ALJ's decision (R. 13, 315-16). He has a high school education (R. 13, 80). He worked in the past as a window cleaner, apartment maintenance worker, stocker and driver (R. 76, 90, 316, 321). He said he stopped working due to emotional problems and the residual effects of testicular surgery (R. 317).

### 1.    *Plaintiff's Testimony and Statements*

Plaintiff has a history of substance abuse, but testified than he had not taken illegal drugs since two years prior to his hearing (R. 322). Plaintiff also described difficulty using his left hand resulting from a remote wrist fracture (R. 319, 324).

Plaintiff alleged a history of major depression and bipolar disorder, and described a history of suicidal ideation and difficulty getting along with co-workers (R. 317-18, 324-25). He said he saw a psychiatrist every month, and took medications which made him sleepy (R. 316-17, 324).

Plaintiff used public transportation, rode a bicycle, performed his household chores including cooking and shopping (R. 115, 320, 324). He said he experienced mood swings and was argumentative, but had friends whom he visited occasionally. In 2005 and 2006 he worked

---

[1] Although Plaintiff alleged disability due, in part, to physical impairments including a history of testicular surgery and a remote wrist fracture, Plaintiff's Brief does not allege any error in the ALJ's determination that Plaintiff could perform the exertional requirements of a limited range of light-level work. The facts herein are limited to those necessary to respond to Plaintiff's current claims.

2

for a records moving and storage company; he left that job because work was getting slim and he was having difficulty getting along with the boss (R. 99-100, 115, 223, 321).

### 2. *Medical Evidence*

Plaintiff underwent urological surgery in December 2003 (R. 194). In July 2005, Plaintiff was treated for complaints of pain in his right testicle (R. 151). The following December Plaintiff was treated for epididymitis of the right testicle, and was instructed to avoid heavy lifting (R. 204-05). In January 2006 Plaintiff was observed to be neurologically intact, and was again instructed to avoid heavy lifting (R. 207-10). In December 2007, Plaintiff complained of groin pain (R. 275).

Plaintiff has been diagnosed with major depressive and bipolar disorders, and a history of polysubstance abuse (R. 178-80, 202, 238). On May 20, 2005, Psychiatrist Dalta Raju, M.D., noted Plaintiff claimed he had "symptoms of depression, crying spells, and loss of interest in life" (R. 179). Dr. Raju diagnosed Plaintiff as "major depressive order recurrent," and gave a Global Assessment of Functioning ("GAF") rating of 45.[2] In October 2005, the state disability consultant, Psychologist Edward Czarnecki, Ph.D., reviewed the evidence of record and concluded that Plaintiff did not meet Listing 12.04 or any other listed impairment (R. 130-43). Dr. Czarnecki concluded that Plaintiff experienced moderate limitations with respect to

---

[2] The GAF score is a subjective determination that represents "the clinician's judgment of the individual's overall level of functioning." AMERICAN PSYCHIATRIC ASSOC., DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS, (4th ed.1994) at 30. It ranges from 100 (superior functioning) to 1 (persistent danger of severely hurting self or others, persistent inability to maintain minimal personal hygiene, or serious suicidal act with clear expectation of death). *See id.* at 32. A GAF score of 31-40 indicates "some impairment in reality testing or communication (e.g., speech is at times illogical, obscure, or irrelevant) or major impairment in several areas such as work or school, family relations, judgment, thinking or mood." *Id.* A GAF of 41 to 50 means that the patient has "[s]erious symptoms . . . or any serious impairment in social, occupational, or school functioning (*e.g.* no friends, unable to keep a job)." *Id.* A GAF rating of 51 to 60 signals the existence of moderate difficulty in social or occupational functioning. *Id.*

3

maintaining attention and concentration for prolonged periods, remembering and carrying out detailed instructions, and interacting with others (R. 144-46).  In August 2005, Plaintiff's counsel indicated that Plaintiff was working (R. 163).

In February 2006, Plaintiff spent three days in an in-patient facility for depression before being discharged in improved condition (R. 242-73).  Psychologist Wendy Vanemark, M.D., stated at his admission: "He is disheveled.  He appears older than his stated age.  Poorly groomed.  Eye contact is okay.  Speech is fluent and articulate.  Mood is depressed.  Affect the same.  Positive suicidal ideation.  No homicidal ideation, auditory or visual hallucinations.  Thought process is logical and goal directed.  Insight and judgment are fair" (R. 273).  Dr. Vanemark diagnosed Plaintiff as bipolar, and gave a GAF rating of of 25-30.

In July 2006, Irwin P. Adelson, M.D., described Plaintiff as much improved in response to medication (R. 223).  Dr. Adelson noted that Plaintiff was working 30-35 hours per week, but opined that "during close questioning" Plaintiff "appear[ed]" to satisfy the criteria for bipolar disorder.  Dr. Adelson assigned Plaintiff a GAF rating of 51, indicative of moderate limitations of social or vocational functioning.

In December 2007, Dr. Adelson again assigned Plaintiff a GAF of 51 (R. 285).  Dr. Adelson also completed forms describing Plaintiff as exhibiting marked and extreme limitations as the result of bipolar disorder (R. 287-94).

### 3.   *Vocational Evidence*

VE Pegram indicated that Plaintiff's past work as a window cleaner was unskilled at the medium exertional level (R. 326).  Plaintiff's past work as an apartment maintenance worker was low semiskilled, medium work with no transferable skills to other work.  Plaintiff's past

4

work as a stock worker was unskilled and medium. His past work as a driver was semiskilled and low, heavy work with no transferable skills to other work.

The ALJ asked VE Pegram whether jobs existed that Plaintiff could perform if he were capable of simple light work involving no more than three-step instructions, and requiring no interaction with the general public and no more than minimal interaction with supervisors and co-workers (R. 326-27). Ms. Pegram responded that such an individual could perform a significant number of light-level jobs in the regional economy including janitorial work and industrial jobs including simple assembly, inspection, sorting, and packaging, of which there are 18,850 such jobs in southeastern Michigan (R. 327). Yet, if Plaintiff's testimony was fully credited, there would be no jobs Plaintiff could perform (R. 328). Similarly, ALJ Kalt acknowledged that if he fully credited Dr. Adelson's statements, there would be no jobs Plaintiff could perform.

### 4. *ALJ Kalt's January 31, 2008, Decision*

ALJ Kalt found that Plaintiff met the insured status requirement of the Social Security Act on March 15, 2005, the date Plaintiff stated he became unable to work, and continued to meet them through at least June 30, 2011 (R. 16). Moreover, Plaintiff had not engaged in substantial gainful activity since March 15, 2005, the alleged onset date. The ALJ further found the medical evidence establishes that Plaintiff has epididymitis of the right testicle, bipolar disorder and a history of polysubstance abuse. Yet, ALJ Kalt found that Plaintiff did not have an impairment of combination of impairments that met or medically equals one of the listed impairments in Appendix 1, Subpart P, Regulations No. 4.

The ALJ found that Plaintiff's testimony regarding the extent of his limitations was not fully corroborated by the objective medical evidence. ALJ Kalt stated that the objective medical

5

evidence does not indicate Plaintiff has significant physical limitations, and specifically noted that Plaintiff's February 2006 physical exam was unremarkable (R. 14).  Yet, due to the Plaintiff's history of groin pain and right testicular surgery, Plaintiff was limited to no heavy lifting.  In addition, ALJ Kalt found that the credible medical evidence indicates that Plaintiff has moderate limitations maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace (R. 15).  Therefore, Plaintiff was limited to simple 1-2-3 step operations, no work which involves interaction with the public, and work which involves only minimal contact with supervisors and coworkers.

The ALJ declined to give the opinion of Dr. Adelson controlling weight.[3]  ALJ Kalt opined that Dr. Adelson had not identified any objective observations to corroborate his assessment.  Moreover, his assessment is inconsistent with the Plaintiff's activities which include working, shopping and taking public transportation.  Also, in July 2006, Plaintiff indicated that he had improved significantly with the use of medications and there is no indication of a deterioration of the Plaintiff's condition.  Plaintiff's global assessment functioning scores have been consistently 50-51, which indicates only moderate impairment.  Moreover, Dr. Adelson's own records indicate the GAF of 51, which is inconsistent with a finding of marked difficulty maintaining social functioning or marked difficulty maintaining concentration, persistence or pace.

The ALJ concluded that Plaintiff has the residual functional capacity for light work with limitations of simple 1-2-3 step operations, no work which involves interaction with the public, and work which involves only minimal contact supervisors and coworkers (R. 16).  ALJ Kalt

---

[3] The ALJ's decision refers to a doctor "Nelson," however, no such doctor's name can be found in the records.  Apparently, "Nelson" refers to Dr. Adelson.  Plaintiff and Defendant agree with this conclusion (Dkt. #11, p. 3; Dkt. #15, p. 10).

6

further concluded that Plaintiff has a high school education, is unable to perform any past relevant work, and should be considered a younger individual on the alleged onset date, which is defined as an individual aged 45-49 (R. 17). Given Plaintiff's age, education, work experience, and residual functional capacity, ALJ Kalt found there are jobs that exist in significant numbers in the national economy that Plaintiff can perform referring to the jobs VE Pegram identified. Accordingly, it was the decision of ALJ Kalt that Plaintiff had not been under a disability within the meaning of the Social Security Act at any time from through the date of his decision.

**II.     ANALYSIS**

    **A.     Standards of Review**

In adopting federal court review of Social Security administrative decisions, Congress limited the scope of review to a determination of whether the Commissioner's decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Sherrill v. Sec'y of Health and Human Servs.*, 757 F.2d 803, 804 (6th Cir. 1985). Substantial evidence has been defined as "[m]ore than a mere scintilla;" it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. *Mullen v. Brown*, 800 F.2d 535, 545 (6th Cir. 1986) (*citing Baker v. Heckler*, 730 F.2d 1147, 1150 (8th Cir. 1984)).

If the Commissioner seeks to rely on vocational expert testimony to carry her burden of proving the existence of a substantial number of jobs that Plaintiff can perform, other than her past work, the testimony must be given in response to a hypothetical question that accurately describes Plaintiff in all significant, relevant respects. A response to a flawed hypothetical

question is not substantial evidence and cannot support a finding that work exists which the Plaintiff can perform.  *See, e.g., Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987) (hypothetical question must accurately portray Plaintiff's physical and mental impairments); *Cole v. Sec'y of Health and Human Servs.*, 820 F.2d 768, 775-76 (6th Cir. 1987) (Milburn, J., dissenting) ("A vocational expert's responses to hypothetical questions may constitute substantial evidence only if the questions posed accurately portray the Plaintiff's impairments."); *Bradshaw v. Heckler*, 810 F.2d 786, 790 (8th Cir. 1987) ("The question must state with precision the physical and mental impairments of the Plaintiff."); *Myers v. Weinberger*, 514 F.2d 293, 294 (6th Cir. 1975); *Noe v. Weinberger*, 512 F.2d 588, 596 (6th Cir. 1975).

B.      **Factual Analysis**

In his motion for summary judgment Plaintiff contends the ALJ erred because "the preponderance of the medical evidence. . . establishes that [he] is disabled" (Dkt. #11, p. 3-9).[4] Specifically, Plaintiff argues ALJ Kalt erred in the weight he afforded the medical opinion evidence of record, by affording insufficient weight to the opinions of his treating psychiatrist, Dr. Adelson, that Plaintiff experience marked limitations as the result of his emotional impairment.  Plaintiff contends that Dr. Adelson's opinion supports a finding that Plaintiff met Section 12.04 of the Listing of Impairments, and that the ALJ gave no explanation why he rejected Dr. Adelson's opinion.

It is well established that the findings and opinions of treating physicians are entitled to substantial weight.  The case law in this circuit has stated that if adequately supported by

---

[4] The appropriate standard for judicial review is not whether an individual's claim is supported by a preponderance of the evidence, but instead, whether substantial evidence in the record as a whole supports the Commissioner's decision.  42 U.S.C. § 405(g); *Richardson v. Perales*, 402 U.S. 390 (1971).

objective findings, and if uncontradicted by other substantial medical evidence of record, a treating physician's opinion of disability is binding on the Social Security Administration as a matter of law. *See Harris v. Heckler*, 756 F.2d 431, 435 (6th Cir. 1985) ("The medical opinions and diagnoses of treating physicians are generally accorded substantial deference, and if the opinions are uncontradicted, complete deference"); *King v. Heckler*, 742 F.2d 968, 973 (6th Cir. 1984) (same); *Lashley v. Secretary of HHS*, 708 F.2d 1048, 1054 (6th Cir. 1983) (same); *Bowie v. Harris*, 679 F.2d 654, 656 (6th Cir. 1982); *Allen v. Califano*, 613 F.2d 139, 145 (6th Cir. 1980). The administrative decision could reject a properly supported treating physician's opinion of disability if the record contains "substantial evidence to the contrary." *Hardaway v. Sec'y of HHS*, 823 F.2d 922, 927 (6th Cir. 1987).

Under the Social Security Administration regulations, the Commissioner will generally give more weight to the opinions of treating sources, but it sets preconditions for doing so. 20 C.F.R. §404.1527. The Commissioner will only be bound by a treating source opinion when it is "well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in your case record." 20 C.F.R. § 404.1527(d); *See also*, S.S.R. 96-2p.

Yet, the conclusion of whether a Plaintiff is "disabled" is a decision reserved to the Commissioner to decide. 20 C.F.R. §§ 404.1527(e)(1), (2), 416.927(e)(1), (2). And, "[w]e will not give any special significance to the source of an opinion on an issue reserved to the Commissioner." *Id*. at §§ 404.1527(e)(3), 416.927(e)(3). Here, the ALJ weighed Dr. Adelson's opinion in accordance with controlling law, and he reasonably determined Plaintiff could do a range of simple light level work (R. 15). The regulations and case law recognize that the opinion of a physician, including a treating physician, is entitled to great weight only if it is supported by

9

adequate medical data, including medical signs and laboratory findings, and does not conflict with other evidence. 20 C.F.R. § 404.1527(d)(2)(3)(4).

Here, the ALJ expressly evaluated Plaintiff within the context of Listing 12.04, and set forth his reasons for finding Plaintiff did not meet or equal that or any other listed impairment (R. 14-15). ALJ Kalt noted that Plaintiff was able to use public transportation independently, and was even working during much of the time that he claims to have been continuously disabled. The ALJ considered evidence including Plaintiff's testimony indicating that Plaintiff experienced moderate limitations of social functioning and moderate limitations of concentration, persistence and pace (R. 15). In finding Plaintiff had not demonstrated any episodes of decompensation, the ALJ observed that in July 2006 Plaintiff was working 30-35 hours per week and demonstrating a stable mood while doing so.

Contrary to Plaintiff's contention, ALJ Kalt also specifically addressed the areas in which he considered Dr. Adelson's opinion lacked support and was inconsistent with other credible evidence of record. ALJ concluded that Dr. Adelson had not provided sufficient support for the extreme degree of limitation he described. The record does not show that Dr. Adelson conducted any in-depth testing of Plaintiff's mental status. Nor does the record contain any progress notes or other indication that Dr. Adelson saw Plaintiff during the year and one half period between July 2006 and December 2007 when he completed forms supporting Plaintiff's pursuit of disability benefits. It was therefore reasonable for the ALJ to conclude that Dr. Adelson's conclusory opinion lacked sufficient evidentiary support.

Moreover, ALJ Kalt found Dr. Adelson's opinion that Plaintiff experienced marked and extreme limitations was inconsistent with other credible evidence of record. In

10

July 2006, Dr. Adelson described Plaintiff as significantly improved in response to medication, and working thirty to thirty-five hours per week (R. 223). Dr. Adelson assigned Plaintiff a GAF rating of 51, indicative of no more than moderate functional limitations (*id.*). Although the record does not document that Dr. Adelson saw Plaintiff after this time, in December 2007 he again assigned Plaintiff a GAF rating of 51 (R. 287). The ALJ reasonably concluded that Dr. Adelson's own findings, as well as other evidence in the record including the opinion of the state agency psychologist, supported his conclusion that Plaintiff experienced less severe limitations than Dr. Adelson described.[5] While Plaintiff contends that additional medical evidence supports the conclusions that Plaintiff was significantly limited as the result of his emotional impairment (Dkt. #11, p. 5-6), the record does not document that Plaintiff experienced debilitating emotional limitations for a continuous twelve-month period. 20 C.F.R. §§ 404.1509, 416.909. Although Plaintiff experienced an exacerbation of symptomatology in February 2006, records show that he quickly improved following this episode.

Substantial evidence supports the finding that Dr. Adelson's opinions were not entitled to controlling weight. Even if it were true, that the ALJ failed to articulate "good reasons" for not adopting each and every opinion of Dr. Adelson, the ALJ's detailed discussion of Dr. Adelson's opinions, in conjunction with Plaintiff's testimony, are evidence that, at the very least, the ALJ met the goal of section 1527(d)(2), demonstrating thoughtful consideration of often conflicting medical evidence and adopting those opinions that were consistent with the record as a whole. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

---

[5] In weighing the evidence of record, it was reasonable for the ALJ to attribute weight to the opinions of the state agency physicians who reviewed the evidence of record. 20 C.F.R. §§ 404.1527(f)(1), 416.927(f)(1).

11

### III. RECOMMENDATION

For the reasons stated above, it is **RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED** and Defendant's Motion for Summary Judgment be **GRANTED**. The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local, 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than twenty (20) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: July 23, 2009                               s/ Steven D. Pepe
Ann Arbor, MI                                      United States Magistrate Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that a copy of the foregoing *Report and Recommendation* was served on the attorneys and/or parties of record by electronic means or U.S. Mail on July 23, 2009.

s/John Purdy<br>Deputy Clerk